## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SERENA WILLIAMS,  :  | |
|  : | |
|  Plaintiff,  : | Civil Action No. 05-1879 (FLW) |
|  : | |
|  v.  : | |
|  : | |
| JO ANNE B. BARNHART,  : | **MEMORANDUM OPINION** |
| COMMISSIONER OF SOCIAL  : | |
| SECURITY,  : | |
|  : | |
|  Defendant.  : | |
|  : | |

**WOLFSON, United States District Judge**

Plaintiff Serena Williams appeals from the final decision of Commissioner of Social Security, Jo Ann B. Barnhart ("the Commissioner"), denying her disability benefits under the Social Security Act. The Court has jurisdiction to hear this matter pursuant to 42 U.S.C. § 405(g).

Plaintiff contends that the record, when considered in full, completely substantiates her claims and requires a conclusion that she is disabled and entitled to benefits. Specifically, Plaintiff maintains that the Administrative Law Judge, William J. Reddy ("the ALJ"), erred by (1) failing to pose a proper hypothetical to the vocational expert at Plaintiff's hearing, (2) failing to properly determine Plaintiff's residual functional capacity, (3) failing to properly assess Plaintiff's credibility, and (4) failing to adequately explain his rejection of the evaluation of

1

Plaintiff's treating physician.  Alternatively, Plaintiff asserts that a remand is necessary based on new and material evidence she obtained subsequent to the hearing.  For the reasons stated below, this matter is remanded for further proceedings consistent with my opinion.

## I.    BACKGROUND

Plaintiff, who was fifty years old at the time that the ALJ issued his decision, has a college degree in nursing and past relevant work experience as a public health nurse, a staff pool nurse, and a school nurse.  Administrative Record ("AR") 17.  Plaintiff alleges that she has been disabled since May 7, 2001, due to fibromyalgia, bipolar disorder, and sarcoidosis.  Id.  There is no evidence that she has engaged in any substantial gainful activity since that date.  Id.

### A.  Procedural History

On February 1, 2002, Plaintiff filed an application for disability insurance benefits with the Social Security Administration.  AR 16, 51-53.  The application was denied initially and upon reconsideration.  Id. at 16, 37-41, 43-45.  Following the denial of her application, Plaintiff requested a hearing before an ALJ.  The hearing occurred on March 15, 2004 before ALJ Reddy. Id. at 16.  Plaintiff appeared and offered testimony at the hearing and she was represented by Lawrence Weinstein, Esq.  Id. at 16, 411, 414.   Subsequently, ALJ Reddy issued a decision on April 30, 2004,  in which he determined that Plaintiff was not disabled under the Social Security Act.  Id. at 17, 28.  Plaintiff petitioned the Social Security Appeals Council for review, but the Appeals Council denied Plaintiff's petition on March 2, 2005, rendering the ALJ's decision the final decision of the Commissioner.  Id. at 5-7.  This appeal followed.

**B. Plaintiff's Testimony**

At the administrative hearing, Plaintiff testified that she lives with her sixteen year-old son and twenty-four year old daughter.  AR 415.  In response to inquiries by ALJ Reddy concerning her functional abilities, Plaintiff stated that she has no energy, no strength in her hands, and numbness and tingling in her arms.  Id. at 420, 421.  Plaintiff also explained that she is unable to lift ten pounds and that she can only walk fifteen feet before becoming extremely short of breath.  Id. at 421.  Further, Plaintiff testified that she can only stand for five minutes and sit for five to ten minutes before she has to move around or lie down.  Id. at 421, 422.  Additionally, Plaintiff stated that she cannot climb stairs at all and that she has recently moved from a house to an apartment with an elevator to avoid having to crawl up the stairs.  Id. at 422.  Moreover, the ALJ noted that Plaintiff was using a cane when she entered the hearing in order to help her ambulate and maintain her balance.  Id. at 414-415.

Plaintiff also testified about the effects that her impairments have on her daily life; specifically, Plaintiff explained that her fibromyalgia causes her pain "24/7" and that she takes muscle relaxers in the morning and at night.  Id. at 22, 419, 420.  Moreover, Plaintiff noted that she is unable to do anything at home and that she relies on her children for all the housework, including laundry, cleaning, and grocery shopping.  Id. at 425.  Indeed, Plaintiff stated that she cannot dust or vacuum as it aggravates her sarcoidosis.  Id. at 22, 425.  Further, Plaintiff stated that although she uses inhalers to treat her sarcoidosis, this treatment leaves her dizzy and tired.  Id. at 22.  Finally, Plaintiff testified that she cannot sleep without the aid of medicine.  Id. at 424.

In addition to the physical impairments, Plaintiff testified about her psychological

impairments.  Specifically, Plaintiff testified that she was working four different part time jobs when she lost emotional control at two of them in May 2001 and went on a twenty-six week paid leave.  AR 22.


### C.  Medical Evidence

Dr. Morris Rubin, Ed.D, a psychologist, completed an evaluation of Plaintiff on May 2, 2002, in which he assessed Plaintiff's residual functional capacity ("RFC").  AR 169-177.  Dr. Rubin's evaluation stated that Plaintiff was able to walk two blocks slowly before getting out of breath, stand for ten minutes and sit for one half hour.  Moreover, Dr. Rubin found that Plaintiff could only bend and reach to her knees, lift five pounds without pain and ten pounds with pain, and crawl up stairs.  Finally, Dr. Rubin noted that Plaintiff could reach with no problem and drive her son to school daily.  Id. at 171.

Dr. Steven Klein, D.O., performed a consultative examination of Plaintiff on May 13, 2002, in which he assessed Plaintiff's RFC.  AR 174-181.  In his assessment, Dr. Klein characterized Plaintiff as 5'9" tall and weighing 268 pounds.  Id. at 174.  He noted that Plaintiff was using Toprol, hydrochlorothiazide, Tiazac, and Coumadin for her blood pressure; Flovent for her breathing problems; and Paxil and Wellbutrin for her depression.  Id. at 23, 175.  Dr. Klein performed an EKG on Plaintiff and found that Plaintiff's heart was within normal limits.  Id. He also noted however, that Plaintiff did not appear to have any difficulties in the movement of her joints but that she did report that she had been hospitalized in October and November 2001 for sarcoidosis and deep vein thrombosis and that she suffers from occasional wheezing with exertion.  Id. at 176.

On May 30, 2002, State Agency psychological consultants, Drs. Harding and Shubeck, found that Plaintiff was moderately limited in three categories; specifically, that Plaintiff was moderately limited in her ability to: maintain attention and concentration for extended periods of time; perform activities within a schedule, i.e. maintain regular attendance and punctuality;  and complete a normal workday or workweek without interruptions from psychologically based symptoms or perform at a consistent pace without an unreasonable number and length of rest periods.  AR 196, 197.  In all other 17 categories, however, the psychologists found that Plaintiff was not significantly limited and opined that Plaintiff was experiencing a mild degree of limitation in daily living activities and social functioning, a moderate degree of limitation in maintaining concentration, persistence, or pace, and had not had any episodes of deterioration or decompensation in work settings in the past ten years.  Id. at 23-24, 192-193, 196-198. Indeed, the State Psychologists concluded that Plaintiff was able to do low contact work. Id. at 198.

Plaintiff's medical condition was analyzed twice by the State Agency medical consultants.  The first analysis occurred on June 13, 2002.  AR 200-206.  At that time, Melvin Golish, M.D.,  determined that Plaintiff was able to lift and carry ten pounds frequently and twenty pounds occasionally; could sit, stand, or walk for about six out of eight hours during a workday; and had unlimited push/pull abilities both in her upper and lower extremities.  AR 200-206.  These determinations are compatible with an RFC of ability to perform a full range of light work.  Id. at 22.  However, Dr. Golish did find that Plaintiff had additional restrictions in that she could only occasionally balance, stoop, kneel, crouch, crawl, and climb, and that she had to wear corrective lenses.  Id.  Further, Dr. Golish noted that there was a "question of reliability" in assessing Plaintiff's statements and symptoms.  Id. at 205.

Pursuant to the second analysis, which occurred on December 6, 2002, the medical consultant found that Plaintiff was still able to lift and carry ten pounds frequently and twenty pounds occasionally and could sit for about six hours out of eight hours.  However, the examiner determined that Plaintiff had limited push/pull abilities in both her lower extremities and that she could only stand or walk for about two hours out of eight hours during a workday.  Id. at 252-258.  These findings would render an RFC of ability to perform a limited range of light work.  Id. at 22.  In addition, the examiner also found that Plaintiff had additional restrictions because she could only occasionally climb stairs, ramps, or ladders because of intermittent pain and swelling of her right ankle, and that she should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation.  Id.

On May 21, 2003, Dr. Myron Chu completed a "Fibromyalgia Residual Functional Capacity Questionnaire" and reported "per patient reply" that Plaintiff: could not lift and carry any amount of weight; could walk one-half block; could sit for five minutes continuously; could stand for five minutes continuously; could sit/stand/walk for a total of two hours per eight hour day; required a cane to stand and walk; had several limitations on her functional ability; and would likely miss work more than four times per month and perhaps as many as four weeks per month.  AR 270-275.  Dr. Chu also re-evaluated Plaintiff for fibromyalgia on February 4, 2004, and found that he expected her fibromyalgia problems to continue to last for over twelve months with a "poor" prognosis but that her sarcoidosis prognosis was good.  Id. at 364.  He opined that he really did not know how far Plaintiff could walk, but that he thought she could sit for at least twenty minutes continuously, stand for fifteen minutes continuously, and walk for about four minutes every ten minutes.  Id. at 363-370.  Plaintiff's dependence on a cane was not something

that Dr. Chu was sure of at the time of this evaluation, nor was the amount of weight she could lift.  Id.  He was also unsure of whether Plaintiff's legs needed to be elevated or if she would be absent from work for more than four times per month.  Id.

## II.     DISCUSSION

### A.  Standard of Review

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); see also Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001).  The Commissioner's decisions as to questions of fact are conclusive upon a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000).  While the court must scrutinize the entire record to determine whether the Commissioner's findings are supported by such evidence, Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978), the standard is "highly deferential." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004).  Indeed, "substantial evidence" is defined as "more than a mere scintilla," but less than a preponderance.  McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).  "It means such relevant evidence as a reasonable mind might accept as adequate." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for that of the factfinder." Williams v. Sullivan, 970 F.3d 1178, 1182 (3d Cir. 1992).  Accordingly, even if there is contrary evidence in the record that would justify the opposite conclusion, the

Commissioner's decision will be upheld if it is supported by the evidence.  See Simmonds v.

Heckler, 807 F.2d 54, 58 (3d Cir. 1986).


    **B.  Standard for Entitlement of Benefits**

    Disability insurance benefits may not be paid under the Social Security Act unless

Plaintiff first meets the statutory insured status requirements.  See 42 U.S.C. § 423(c). Plaintiff

must also demonstrate the "inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than twelve

months."  42 U.S.C. § 423(d)(1)(A); see Plummer, 186 F.3d at 427.  An individual is not

disabled unless "[her] physical or mental impairment or impairments are of such severity that

[she] is not only unable to do [her] previous work but cannot, considering [her] age, education,

and work experience, engage in any other kind of substantial gainful work which exists in the

national economy." 42 U.S.C. § 423 (d)(2)(A).

    The Social Security Act establishes a five-step sequential process for an ALJ's evaluation

of whether a person is disabled.  See 20 C.F.R. § 404.1520.  First, the ALJ determines whether

the claimant has shown that she is not currently engaged in "substantial gainful activity." 20

C.F.R. § 404.1520(a); see Bowen v. Yuckert, 482 U.S. 137, 146-47 n.5 (1987).  A claimant

currently engaged in substantial gainful activity is automatically denied disability benefits.  See

20 C.F.R. § 404.1520(b); see also Bowen, 482 U.S. at 140.  Second, the ALJ determines whether

the claimant has demonstrated a "severe impairment" or "combination of impairments" that

significantly limits her physical or mental ability to do basic work activities.  20 C.F.R. §

404.1520(c); see Bowen, 482 U.S. at 146-7 n.5.  Basic work activities relate to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b).  These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." Id.  A claimant who does not have a severe impairment is not disabled.  20 C.F.R. § 404.1520(c); see Plummer, 186 F.3d at 428.  Third, if the impairment is found to be severe, the ALJ determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List").  20 C.F.R. § 404.1520(a)(4)(iii).  If the claimant demonstrates that her impairments are equal in severity to or meet those on the Impairment List, the claimant has satisfied her burden of proof and is automatically entitled to benefits.  See 20 C.F.R. § 404.1520(d); see also Bowen, 482 U.S. at 146-47 n.5.  If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether she retains the residual functional capacity to perform her past relevant work.  20 C.F.R. § 404.1520(d); Bowen, 482 U.S. at 141.  If the claimant is able to perform her previous work, the claimant is determined not to be disabled.  20 C.F.R. §§ 404.1520(e), 416.920(e); Bowen, 482 U.S. at 141-42.  The claimant bears the burden of demonstrating an inability to return to the past relevant work.  Plummer, 186 F.3d at 428.  Finally, if it is determined that the claimant is no longer able to perform her previous work, the burden of production then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy." Bowen, 482 U.S. at 146-47 n.5; Plummer, 186 F.3d at 428.  This step requires the ALJ to consider the claimant's residual functional capacity, age, education, and past work experience.  20 C.F.R. § 404.1520(f).  The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether

the claimant is capable of performing work and not disabled.  Id.

**C.  Decision and findings of the ALJ**

Here, the ALJ determined that Plaintiff has not established step three, that her physical limitations meet or medically equal the criteria of any impairment in the Impairment List.  AR at 18-20.  In addition, the ALJ found that although Plaintiff was unable to perform her past relevant work, she was able to perform work available in the national economy.  Id. at 27.  After careful consideration of the entire record, the ALJ made the following findings:

1.  The claimant meets the non-disability requirements for a Period of Disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.

2.  The claimant has not engaged in substantial gainful activity since May 7, 2001.

3.  The medical evidence establishes that the claimant suffers from fibromyalgia, bipolar disorder, and sarcoidosis, impairments which are severe but which do not meet or equal criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4 (20 C.F.R. § 404.1521).

4.  The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

5.  The claimant retains the capacity to perform light work diminished by

significant additional limitations as:  she can stand/walk for two hours in

an eight hour day; she can sit for up to six hours in an eight hour day; she

can do no pushing and pulling with her lower extremities; she can

occasionally climb, balance, bend, kneel, crouch, and crawl; she must

avoid concentrated (frequent) exposure to fumes, odors, dusts, gases, and

poor ventilation; she is restricted to work that involves simple, repetitive

tasks with only occasional contact with fellow employees and supervisors,

and no contact with the general public.

6.   The claimant's impairments prevent her from performing her past relevant

work as a public health nurse, a staff pool nurse, and a school nurse.

7.   The claimant is a person approaching advanced age and has a college

education (20 C.F.R § 404.1563, 404.1564, 404.1565).

8.   Although the claimant's exertional limitations do not allow her to perform

the full range of light work, using Medical-Vocational Rule 202.14 as a

framework for decision-making, there are a significant number of jobs in

the national economy that she could perform.

9.   The claimant was not under a "disability" as defined in the Social Security

Act, at any time through the date of this decision (20 C.F.R. § 404.1520).


[AR at 27-28].


On March 2, 2005, the ALJ's decision became the final decision of the Commissioner

when Plaintiff's petition for review to the Appeals Council was denied.  Id. at 5-7.

**D.  Plaintiff's arguments on appeal**

On appeal, Plaintiff contends that ALJ Reddy erred when he denied Plaintiff's claim; specifically, Plaintiff argues that the ALJ: (1) failed to pose a proper hypothetical to the vocational expert at plaintiff's hearing; (2) failed to properly determine Plaintiff's residual functional capacity; (3) failed to properly assess Plaintiff's credibility; and (4) failed to adequately explain the rejection of the evaluation of Plaintiff's treating physician.  Alternatively, Plaintiff asserts that a remand is necessary based on new and material evidence she obtained subsequent to the hearing.  For the reasons below, the Court will remand this matter for further proceedings.

**1.  Whether the ALJ Posed a Proper Hypothetical to the Vocational Expert?**

Initially, Plaintiff alleges that the hypothetical posed by the ALJ to the vocational expert did not accurately reflect her limitations because it did not include all her psychological limitations.  At a disability hearing, an ALJ will typically ask a vocational expert a number of hypothetical questions to determine the level of disability of the claimant.  If the ALJ poses such a hypothetical to the vocational expert, the hypothetical must reflect all of the claimant's impairments that are supported by the record.  Ramirez v. Barnhart, 372 F.3d 546, 552 (3d Cir. 2004).  ("A hypothetical question must reflect *all* of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence.")  Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984).

Generally, "great specificity" is required when an ALJ incorporates a claimant's mental or physical limitations into a hypothetical.  Id. at 546, 554-555.

In the instant matter, Plaintiff argues that because the hypothetical to Gary Young, the vocational expert, did not include Plaintiff's psychological limitations, the ALJ could not properly rely on the expert's answers in determining Plaintiff's RFC.  Specifically, Plaintiff contends that although the ALJ gave considerable weight to the findings of the State Agency consultants who determined that Plaintiff was moderately limited in her ability to concentrate, persist in activities, or maintain pace, he did not include these limitations in the hypothetical. Thus, Plaintiff argues that the hypothetical was inadequate.  The Court agrees.

As discussed above, a hypothetical must reflect the impairments that are supported by the record.  In his decision, the ALJ noted that he gave considerable weight to the State Agency psychological findings and determined that they were supported by the record as a whole. Specifically, the state consultants who performed the Mental RFC on Plaintiff determined that although Plaintiff was not significantly limited in 17 of 20 areas, she was moderately limited in three areas – concentration for extended periods, ability to maintain attendance and punctuality, and ability to perform at a consistent pace.  AR 196-199.  As a result, the state consultants determined that Plaintiff was able to perform "low contact work."  AR at 198.  Despite these findings, the ALJ's hypothetical only included the following limitations: "if you had a hypothetical individual who was limited to light exertional level work, would have Ms. Serena's age of 50, college education, and past work experience in the nursing field. . .In addition, the hypothetical individual could only occasionally climb, balance, bend, kneel, crouch and crawl. And the hypothetical individual would be limited to just simple, routine tasks with not more than

13

<u>occasional contact with fellow employees or supervisors and no contact with the general public</u>."
AR 435-437 (emphasis added). Because ALJ Reddy's hypothetical only included limitations for
"low contact work" and for "simple routine tasks," but did not include limitations for
concentration, persistence and pace, the Court finds that the ALJ's hypothetical did not properly
reflect Plaintiff's impairments that were supported by the record.  Indeed, the Court notes that
Plaintiff's attorney posed the following hypothetical to Young, "[i]f the hypothetical individual
were having deficiencies with concentration, persistence, or pace resulting in a failure to
complete tasks in a timely manner on a constant basis, what kind of impact would that have on a
hypothetical individual's ability to perform any type of substantial, gainful activity?"  In
response, Young testified, "[n]o work is possible."  AR 438.   Because Young's response to
Plaintiff's attorney's hypothetical – which included Plaintiff's psychological limitations – was
inconsistent with his response to the ALJ's hypothetical which omitted these limitations,  the
Court finds that the ALJ could not properly rely on Young's response to his hypothetical.

In addition, Plaintiff contends that Young never established a basis for his testimony.
Specifically, Plaintiff argues that the vocational expert did not reference the Dictionary of
Occupational Titles, census studies or his own experience to support his finding that there were
approximately 4,000 assembler jobs and 700 inspector jobs in the region that would fall within
the range of work that Plaintiff could perform. Thus, Plaintiff claims that Young's testimony is
"unsupported and devoid of common sense."  Pl's Br. at 15.

Although both counsel for Plaintiff and Defendant, stipulated to Mr. Young's
qualifications as a vocational expert, AR 434, there is no basis in the record for Mr Young's
testimony.  <u>See</u> <u>Carey v. Apfel</u>, 230 F.3d 131, 146 (5th Cir. 2000) (noting that a majority of

circuits hold that an ALJ may rely upon the testimony of a  vocational expert provided that the record reflects an adequate basis for doing so).   Thus, the Court finds that Mr. Young's testimony was unsupported.

In light of these findings, the Court need not consider Plaintiff's additional arguments and the Court remands this matter to the Commissioner for additional proceedings consistent with this opinion.

Date: June 22, 2006                                    /s/ Freda L. Wolfson_____
                                                      The Honorable Freda L. Wolfson
                                                      United States District Judge

15